UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA

                                                                 12 CR 580 (RRM)

       v.

OFER BITON,                                              ECF CASE

                          Defendant.
-------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL DISCOVERY AND OTHER DISCLOSURES

COVINGTON & BURLING LLP

The New York Times Building
620 Eighth Avenue
New York, NY 10018

*Attorneys for Defendant Ofer Biton*

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................... 1

I. Mr. Biton Is Entitled to Prompt Disclosure of All *Brady* and *Giglio* Material in the Government's Possession or Control ............................................................... 1

II. Mr. Biton Is Entitled to Certain Forms of *Brady* and *Giglio* Disclosure ............ 5

    A. Mr. Biton Is Entitled to Immediate Disclosure of All Impeachment Material Relating to Yoshiyahu Yosef Pinto ........................................... 5

    B. Mr. Biton Is Entitled to All Undocumented *Brady* and *Giglio* Information ........... 7

    C. Mr. Biton Is Entitled to All Attorney Proffer Statements ....................... 8

    D. Mr. Biton Is Entitled to All Handwritten Interview Notes by Government Agents ................................................................................. 8

III. Mr. Biton Is Entitled to Disclosure of the Identities of All Unindicted Coconspirators ............................................................................................... 9

IV. Mr. Biton Is Entitled to Disclosure of All Evidence Pursuant to Federal Rule of Evidence 404(b) ............................................................................................ 11

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brady v. Maryland,*
　373 U.S. 83 (1963)..................................................................................................... passim

*Giglio v. United States,*
　405 U.S. 150 (1972)................................................................................................... passim

*Kyles v. Whitley,*
　514 U.S. 419 (1995)............................................................................................................2

*Leka v. Portunado,*
　257 F.3d 89 (2d Cir. 2001).............................................................................................3, 4

*St. Germain v. United States,*
　2004 WL 1171403 (S.D.N.Y. May 11, 2004) ...................................................................3

*United States v. Annabi,*
　2011 WL 6015635 (S.D.N.Y. Nov. 30, 2011).................................................................11

*United States v. Anzalone,*
　555 F.2d 317 (2d Cir. 1977)..............................................................................................9

*United States v. Avellino,*
　136 F.3d 249 (2d Cir. 1998)..............................................................................................2

*United States v. Bagley,*
　473 U.S. 667 (1985)...........................................................................................................2

*United States v. Barret,*
　824 F. Supp. 2d 419 (E.D.N.Y. 2011) ............................................................................10

*United States v. Bosch,*
　385 F. Supp. 2d 387 (S.D.N.Y. 2005)...............................................................................9

*United States v. Bronson,*
　2007 WL 2455138 (E.D.N.Y. Aug. 23, 2007)...................................................................7

*United States v. Coppa,*
　267 F.3d 132 (2d Cir. 2001)..............................................................................................2

*United States v. Feola,*
　651 F. Supp. 1068 (S.D.N.Y. 1987)................................................................................10

*United States v. Gil,*
　297 F.3d 93 (2d Cir. 2002)................................................................................................3

*United States v. Hanna*,
    198 F. Supp. 2d 236 (E.D.N.Y. 2002) ......................................................................9

*United States v. Harrison*,
    524 F.2d 421 (D.C. Cir. 1975) .................................................................................9

*United States v. Hatfield*,
    2009 WL 2163510 (E.D.N.Y. July 15, 2009) .........................................................11

*United States v. Killeen*,
    1998 WL 760237 (S.D.N.Y. Oct. 29, 1998) .........................................................4, 5

*United States v. Lino*,
    2001 WL 8356 (S.D.N.Y. Jan. 2, 2001) ........................................................4, 6, 10

*United States v. Lonzo*,
    793 F. Supp. 57 (N.D.N.Y. 1992) ............................................................................4

*United States v. Madori*,
    419 F.3d 159 (2d Cir. 2005) ....................................................................................2

*United States v. Mase*,
    556 F.2d 671 (2d Cir. 1977) ....................................................................................9

*United States v. McDonald*,
    2002 WL 2022215 (E.D.N.Y. Aug. 6, 2002) ...........................................................4

*United States v. Miller*,
    411 F.2d 825 (2d Cir. 1969) ....................................................................................2

*United States v. Monserrate*,
    2011 WL 3480957 (S.D.N.Y. Aug. 4, 2011) .........................................................11

*United States v. Nachamie*,
    91 F. Supp. 2d 565 (S.D.N.Y. 2000) ......................................................................10

*United States v. Psihos*,
    2009 WL 1033353 (N.D. Ill. Apr. 14, 2009) ...........................................................4

*United States v. Santiago*,
    174 F. Supp. 2d 16 (S.D.N.Y. 2001) ......................................................................10

*United States v. Sperling*,
    506 F.2d 1323 (2d Cir. 1974) ..................................................................................2

*United States v. Triumph Capital Group, Inc.*,
    544 F.3d 149 (2d Cir. 2008) ....................................................................................8

*United States v. Urso*,
    369 F. Supp. 2d 254 (E.D.N.Y. 2005) ..................................................................................9

**STATUTES**

18 U.S.C. § 371 ...............................................................................................................................1

18 U.S.C. § 1546(a) ....................................................................................................................6, 9

**OTHER AUTHORITIES**

Federal Rule of Evidence 404(b) ...............................................................................................1, 11

Federal Rule of Evidence 801(d)(2)(E) and (ii) ............................................................................10

UNITED STATES ATTORNEY'S MANUAL, § 9-5.001 ..........................................................................3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
UNITED STATES OF AMERICA

                                                                                      12 CR 580 (RRM)

      v.

OFER BITON,                                                         ECF CASE

                          Defendant.
---------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
TO COMPEL DISCOVERY AND OTHER DISCLOSURES**


Mr. Biton has been charged with one count of conspiring to make false statements in an immigration application, in violation of 18 U.S.C. § 371. (Dkt. 13).

Mr. Biton respectfully moves this Court to compel the Government to promptly produce the documents and other information identified in this motion, including (I) *Brady* and *Giglio* material generally, (II) specific forms of *Brady* and *Giglio* disclosure, (III) the identities of alleged coconspirators, and (IV) materials pursuant to Federal Rule of Evidence 404(b).


**ARGUMENT**

**I.    Mr. Biton Is Entitled to Prompt Disclosure of All *Brady* and *Giglio* Material in the Government's Possession or Control**

Mr. Biton is entitled to prompt disclosure of all information in the Government's possession or control that is favorable to Mr. Biton, including all information material to either guilt or punishment. *See Brady v. Maryland,* 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

1

The Government is constitutionally required to disclose not only substantively exculpatory evidence, but also impeachment evidence relevant to any witness whose reliability "may be determinative of guilt or innocence" of the defendant. *United States v. Madori*, 419 F.3d 159, 170 (2d Cir. 2005) (*citing Giglio*, 405 U.S. 150). In this regard, the Supreme Court has established that the Government's due process obligation to disclose exculpatory information applies with equal strength to impeachment material. *See United States v. Bagley,* 473 U.S. 667, 676 (1985); *Kyles v. Whitley,* 514 U.S. 419, 433 (1995) ("[T]he Court [has] disavowed any difference between exculpatory and impeachment evidence for *Brady* purposes . . . .").

For due process purposes, "impeachment evidence" constitutes any material "having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." *Id.* (quotation omitted). Impeachment information must be produced if there is a "significant chance" the evidence will induce "reasonable doubt in the minds of enough jurors to avoid a conviction." *United States v. Sperling*, 506 F.2d 1323, 1333 (2d Cir. 1974) (*quoting United States v. Miller*, 411 F.2d 825, 832 (2d Cir. 1969)).

Moreover, the Government must disclose all *Brady* and *Giglio* evidence "in time for its effective use" by the defendant. *United States v. Coppa*, 267 F.3d 132, 143–46 (2d Cir. 2001). Although the touchstone of "time for effective use" is the materiality of the evidence, *id.* at 146, this requirement generally calls for disclosure sufficiently in advance of trial to make effective use of the information. *See, e.g.*, *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) ("The government's obligation to make such disclosures is pertinent not only to an accused's preparation for trial but also to his determination of whether or not to plead guilty."). Indeed, the U.S. Attorney's Manual expressly states that such disclosures should generally be made before trial:

> Timing of disclosure. Due process requires that disclosure of exculpatory and impeachment evidence material to guilt or innocence be made in sufficient time to permit the defendant to make effective use of that information at trial. <u>In most cases, the disclosures required by the Constitution and this policy will be made in advance of trial</u>.

UNITED STATES ATTORNEY'S MANUAL, § 9-5.001 (emphasis added).

This is an important right of the defense; indeed, when the Government unjustifiably withholds such information until immediately before trial, courts have found that such belated disclosure constitutes a *Brady* violation. *See, e.g.*, *United States v. Gil*, 297 F.3d 93, 106 (2d Cir. 2002) (holding disclosure of exculpatory memorandum three days before trial violated *Brady* because the memorandum "was not easily identifiable as a document of significance"); *Leka v. Portunado*, 257 F.3d 89, 103 (2d Cir. 2001) (holding disclosure of exculpatory witness's name one week prior to trial, without more, violated *Brady*); *see also St. Germain v. United States*, 2004 WL 1171403, at *10–11 (S.D.N.Y. May 11, 2004) (finding *Brady* violation when exculpatory evidence was produced three days before trial in a folder indicating it contained only Jencks Act materials). In finding the Government's tardy disclosure in *Leka* violated *Brady*'s constitutional command, the Second Circuit explained:

> When such a disclosure is first made on the eve of trial, or when trial is under way, the opportunity to use it may be impaired. The defense may be unable to divert resources from other initiatives and obligations that are or may seem more pressing. And the defense may be unable to assimilate the information into its case.

*Leka*, 257 F.3d at 101. Thus, disclosure on the eve of trial "may be insufficient unless it is fuller and more thorough than may have been required if the disclosure had been made at an earlier stage." *Id.* By any measure, "the government runs a certain risk when it turns over so late documents sought by the defense for so long." *Gil*, 297 F.3d at 106.

3

In light of these concerns, courts in this circuit have ordered disclosure of exculpatory evidence well in advance of trial. *See, e.g.*, *United States v. McDonald*, 2002 WL 2022215, at *2 (E.D.N.Y. Aug. 6, 2002) (ordering disclosure of *Giglio* material "no later than four weeks before trial," even when Government had already produced dozens of boxes of documents); *United States v. Lino*, 2001 WL 8356, at *16 (S.D.N.Y. Jan. 2, 2001) (ordering immediate disclosure of *Giglio* material; "the Court is well aware of the importance of impeachment material to this case due to the prominent role of the Government's main cooperating witness . . . ."); *United States v. Killeen*, 1998 WL 760237, at *6 (S.D.N.Y. Oct. 29, 1998) (ordering disclosure of *Giglio* material in financial-fraud case "no later than six weeks before trial"); *United States v. Lonzo*, 793 F. Supp. 57, 60 (N.D.N.Y. 1992) (ordering disclosure of *Brady* and *Giglio* material "as soon as it becomes known"); *see also United States v. Psihos*, 2009 WL 1033353, at *1 (N.D. Ill. Apr. 14, 2009) (ordering disclosure of *Giglio* material 45 days prior to trial; "A reasonable amount of time in which to produce *Brady* and *Giglio* materials would be 45 days before trial, which would afford Psihos sufficient opportunity to make use of the evidence.").

In this case, the Government undoubtedly possesses information relevant to the credibility of its witnesses and may also possess non-impeachment exculpatory information. Receiving *Brady* and *Giglio* information on the eve of trial would constructively deny Mr. Biton his constitutional rights, as his opportunity to use the information effectively at trial would be impaired. *See Leka*, 257 F.3d at 101. As a result, Mr. Biton respectfully submits that due process requires prompt disclosure of all *Brady* and *Giglio* materials and other information in the Government's possession or control. We respectfully request that the Court order the

4

Government to provide such disclosure six (6) weeks before trial. *See Killeen*, 1998 WL 760237, at *6.[1]

## II. Mr. Biton Is Entitled to Certain Forms of *Brady* and *Giglio* Disclosure

In addition to the foregoing general motion for the disclosure of all *Brady* and *Giglio* material in the Government's possession or control, Mr. Biton also is entitled to (A) immediate disclosure of all impeachment material relating to Yoshiyahu Yosef Pinto ("Pinto"), (B) undocumented *Brady* and *Giglio* information, (C) proffer statements made by witnesses' attorneys, and (D) handwritten interview notes of prosecutors, investigators and other Government agents.

### A. Mr. Biton Is Entitled to Immediate Disclosure of All Impeachment Material Relating to Yoshiyahu Yosef Pinto

Mr. Biton is entitled to immediate disclosure of all information in the Government's possession or control bearing on the credibility of Yoshiyahu Yosef Pinto, an expected witness for the prosecution at trial. As the jury's estimation of Pinto's truthfulness and reliability may well be determinative of Mr. Biton's guilt or innocence, Mr. Biton is entitled to this impeachment material under *Giglio*. Moreover, as Pinto is an Israeli national and native Hebrew speaker, some of his impeachment material may require certified translation prior to its use at trial. Under these circumstances, Mr. Biton respectfully requests this Court to order immediate disclosure of the requested material.

The Government has charged Mr. Biton with conspiring to make a false statement in an immigration application—namely, the statement that the source of the $500,000 that Mr. Biton invested in connection with his so-called Alien Entrepreneur application was a loan from

---

[1] Mr. Biton also moves for the timely disclosure of all Jencks Act material.

5

"Witness #1." To obtain a conviction, the Government must prove, *inter alia*, that this statement was materially false. *See* 18 U.S.C. § 1546(a).

According to the Complaint, the actual source of the funds was Witness #4. (*See* Vinegrad Decl. Ex. A, ¶ 13). According to Witness #4—whom we understand to be Pinto—Mr. Biton and an unnamed co-conspirator "demanded" that Pinto transfer those funds to Mr. Biton. (*Id.*). Presumably, the Government will contend that, by stating that the funds were the proceeds of a loan from Witness #1 rather than the fruits of a "demand" to Pinto, the immigration application was materially false.

Mr. Biton by no means agrees with the Government's version of events. Nevertheless, it is plain that Pinto's credibility will be a central issue at trial. Indeed, the jury's evaluation of Pinto's testimony "may well be determinative of guilt or innocence." *See Seijo*, 514 F.2d at 1364. As a result, any impeachment evidence against Pinto is especially crucial and must be promptly disclosed. *See Lino*, 2001 WL 8356, at *16 (ordering immediate disclosure of *Giglio* information in part because of "the prominent role" of the witness in question).

This is no theoretical request. Various public sources indicate that Pinto may have been involved in a number of criminal activities. Among other things:

- In 2012, after Mr. Biton was indicted, Pinto and his wife were reportedly arrested in Israel for money laundering and for attempting to bribe an Israeli police investigator with a suitcase containing $200,000 in cash. (Vinegrad Decl. Exs. B and C). The underlying investigation involved the alleged embezzlement of funds from an Israeli charity by a charity executive (a Pinto aide), who is also suspected of selling food intended for Holocaust survivors. (*Id.* Ex. C).

- Pinto reportedly caused his father-in-law (a chief rabbi in Argentina) to purchase an apartment in Jerusalem for over $1 million as part of a money laundering scheme. (*Id.* Exs. D and E).

- Several investors who lost millions of dollars in various real estate projects connected to Pinto have reportedly been threatened by Pinto, and persons close to him, for seeking to recoup their losses. (*Id.* Ex. F)

6

In light of these, and potentially other, activities, Mr. Biton has reason to believe the Government is in possession of documents and other information directly relevant to Pinto's credibility. And if it is, there can be no question that Mr. Biton is entitled to them.

In addition, as Pinto reportedly does not speak English (*see* Vinegrad Decl. Ex. G), impeachment material pertaining to Pinto may include foreign-language documents that will require certified translations prior to trial. As a result, if the Government discloses such material on the eve of trial, an adjournment may be required to permit Mr. Biton to fully review, and make effective use of, these materials. Such a delay in the proceedings would be disruptive to the parties and to the Court. *See United States v. Bronson*, 2007 WL 2455138, at *14 (E.D.N.Y. Aug. 23, 2007) (noting "early disclosure of *Jencks* and *Giglio* materials greatly aids the court since late disclosure has the real potential of disrupting the flow of trial").

Under all of these circumstances, both justice and pragmatism call for immediate disclosure of any Pinto impeachment material.

B. Mr. Biton Is Entitled to All Undocumented *Brady* and *Giglio* Information

Mr. Biton also is entitled to disclosure of all undocumented *Brady* and *Giglio* information in the Government's possession and control. If the Government has learned exculpatory or impeachment-related information in the course of its investigation, it must disclose such information even if it was not reduced to writing or otherwise recorded.

In *United States v. Rodriguez*, the Second Circuit explained, "The obligation to disclose information covered by the *Brady* and *Giglio* rules exists without regard to whether that information has been recorded in tangible form." 496 F.3d 221, 226 (2d Cir. 2007). Consequently, "When the Government is in possession of material information that impeaches its witness or exculpates the defendant, it does not avoid the obligation under *Brady*/*Giglio* to disclose the information by not writing it down." *Id.* at 222.

7

Mr. Biton therefore requests this Court to order the Government to disclose all undocumented exculpatory and impeachment information.

C.  Mr. Biton Is Entitled to All Attorney Proffer Statements

Mr. Biton moves for the disclosure of all materials reflecting any proffer of evidence made by the attorney of any witness. *See United States v. Triumph Capital Group, Inc.*, 544 F.3d 149, 162 (2d Cir. 2008); *see also* Memorandum for Department Prosecutors, Jan. 4, 2010 ("Ogden Memo") ("All potential *Giglio* information known by or in the possession of the prosecution team relating to non-law enforcement witnesses should be gathered and reviewed [including] [p]rior inconsistent statements (possibly including inconsistent attorney proffers).").

In *Triumph Capital*, the Second Circuit held that suppression of an agent's notes of an attorney proffer (given on behalf of a prosecution witness) violated *Brady*, as those notes were inconsistent with the Government's trial theory and were thus relevant to the defendant's trial defense. *Id.* The court held, "By suppressing [the agent's] notes of that proffer, the government deprived [the defendant] of exculpatory evidence going to the core of its bribery case against him." *Id.*

In order to ensure Mr. Biton's rights to a fair trial and due process, the Court should order similar disclosure here.

D.  Mr. Biton Is Entitled to All Handwritten Interview Notes by Government Agents

Mr. Biton also moves this Court to compel preservation of all handwritten notes related to the interviews of Government witnesses and to produce all such notes containing any *Brady* or *Giglio* information.

In the course of the investigation, Government agents have presumably conducted interviews of various witnesses and memorialized those interviews in handwritten notes. To the extent these notes contain information not reflected in resulting formal interview memoranda that

will otherwise be disclosed to the defense, they may contain *Brady* and *Giglio* information that must be produced. *See, e.g.*, *United States v. Mase,* 556 F.2d 671 (2d Cir. 1977) (stating the Government would be "well-advised" to retain handwritten notes until the prosecution is terminated); *United States v. Urso*, 369 F. Supp. 2d 254, 274 (E.D.N.Y. 2005) (ordering the Government to preserve all interview notes relating to prospective witnesses); *United States v. Hanna*, 198 F. Supp. 2d 236, 248 (E.D.N.Y. 2002) (ordering the Government to preserve and produce for *in camera* review all agents' notes); *United States v. Bosch,* 385 F. Supp. 2d 387, 390–91 (S.D.N.Y. 2005) (ordering preservation of rough notes); *see also United States v. Anzalone*, 555 F.2d 317, 321 (2d Cir. 1977) (stating handwritten notes can constitute *Brady* material if they "would have been helpful to the defense") (*citing United States v. Harrison*, 524 F.2d 421, 429 (D.C. Cir. 1975)).

Thus, to preserve his rights under *Brady* and *Giglio*, Mr. Biton requests this Court to order the Government to (i) preserve all Government agents' interview notes, and (ii) promptly produce any notes containing exculpatory or impeachment-related information.

### III. Mr. Biton Is Entitled to Disclosure of the Identities of All Unindicted Coconspirators

The indictment charges that Mr. Biton, "together with others," conspired to violate Section 1546(a). But, to date—and despite repeated requests[2]—the Government has refused to identify who those "others" are. Accordingly, Mr. Biton respectfully moves this Court to compel the Government to identify them.

Courts in the Second Circuit often grant motions to identify unindicted coconspirators when such information is "necessary to prepare a defense and avoid surprise" at trial. *See, e.g.*,

---

[2] *See* Vinegrad Decl. ¶ 2 and Exs. H and I.

*United States v. Barret*, 824 F. Supp. 2d 419, 442 (E.D.N.Y. 2011); *see Lino*, 2001 WL 8356, at *12 ("Requests for names of unindicted co-conspirators are fairly common and often are granted by district courts."); *United States v. Feola*, 651 F. Supp. 1068, 1133 (S.D.N.Y. 1987) (ordering disclosure of coconspirators' identities).

In this case, Mr. Biton requires this information in order to properly prepare his defense. Among other things, such disclosure will affect both (i) the potential admissibility of statements against Mr. Biton under Federal Rule of Evidence 801(d)(2)(E) and (ii) Mr. Biton's trial strategy with respect to those individuals the Government contends participated in the alleged conspiracy. Disclosure of this information will thus avoid unfair prejudicial surprise at trial.

In addition, there is no good reason for the Government not to provide this information in this case. This is not a case in which concerns about violence or the safety of witnesses is an issue. *Cf. United States v. Santiago*, 174 F. Supp. 2d 16, 35 (S.D.N.Y. 2001) ("[T]he identities of unindicted co-conspirators have been disclosed primarily in cases in which violence was not alleged."); *see also United States v. Nachamie*, 91 F. Supp. 2d 565, 573 (S.D.N.Y. 2000) (noting the court had no concern that disclosing identities would endanger unindicted coconspirators when the crimes charged involved fraud, "not narcotics trafficking or murder"). Nor is the requested disclosure tantamount to the disclosure of witnesses in any event: indeed, it may well be that none of the "others" will be witnesses at trial. All that Mr. Biton seeks is the Government's position on who (other than Mr. Biton, and "Coconspirator #1"—whose identity is already known to the defense) was allegedly a criminal participant in the charged conspiracy.

Thus, as the requested information will afford Mr. Biton the opportunity to develop a full and fair defense—and will not impair the Government's ability to prosecute its case—the Government should be required to disclose the identities of all unindicted coconspirators.

**IV.     Mr. Biton Is Entitled to Disclosure of All Evidence Pursuant to Federal Rule of Evidence 404(b)**

Finally, Mr. Biton is entitled to disclosure of all evidence the Government intends to offer at trial pursuant to Federal Rule of Evidence 404(b). Upon request, the Government is required to provide Mr. Biton with "reasonable notice of the general nature of any such evidence" and generally must "do so before trial." *See* FED. R. EV. 404(b). Mr. Biton requests this Court to order the disclosure of any such evidence thirty (30) days before trial. *See, e.g.*, *United States v. Hatfield*, 2009 WL 2163510, at *1 (E.D.N.Y. July 15, 2009) (ordering disclosure 30 days before trial); *United States v. Monserrate*, 2011 WL 3480957, at * 4 (S.D.N.Y. Aug. 4, 2011) (same); *United States v. Annabi*, 2011 WL 6015635, at *4 (S.D.N.Y. Nov. 30, 2011) (same).

## CONCLUSION

For the foregoing reasons, Mr. Biton respectfully requests that this Court grant his pre-trial motions.

Dated: New York, New York
      May 15, 2013

Respectfully submitted,

 /s/ Alan Vinegrad
Alan Vinegrad
Douglas S. Curran
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 841-1000
Fax: (212) 841-1010
avinegrad@cov.com
dcurran@cov.com

*Attorneys for Defendant Ofer Biton*